OPINION
Plaintiff-appellant Jennifer Hopkins appeals five separate Judgment Entries of the Tuscarawas County Court of Common Pleas, each entered on August 1, 2001, which overruled her motions for summary judgment against defendants-appellees Douglas Dyer, Lumberman's Mutual Casualty Company (hereinafter "Lumberman's"), Nationwide Mutual Insurance Company (hereinafter "Nationwide"), Personal Service Insurance Company (hereinafter "Personal Service"), and Motorists Mutual Insurance Company (hereinafter "Motorists"). Appellant also appeals the trial court's grant of each of these appellees' cross motions for summary judgment against her.
Appellant also appeals the September 18, 2000 Judgment Entry of the Tuscarawas County Court of Common Pleas which overruled her motion to dismiss and for default judgment against appellee Douglas Dyer, and which granted Dyer's motion for leave to file an answer instanter.
 STATEMENT OF THE FACTS AND CASE
On July 6, 1988, appellant was seriously injured when a car driven by Dyer struck the bicycle appellant was riding. The accident occurred as a result of Dyer's operation of his motor vehicle while under the influence of alcohol, operating his vehicle recklessly, and failing to maintain an assured clear distance.
At the time of the accident, Dyer was insured under an automobile insurance policy issued by Allstate Insurance Company (hereinafter "Allstate"). Allstate's policy provided liability insurance to Dyer in the amount of $15,000. Appellant's injuries were serious, and appellant incurred medical bills in an amount exceeding $35,000 on the night of the accident alone. Neither appellant nor her mother, Nancy Hopkins, had homeowners or automobile insurance coverage. Nancy Hopkins, with whom appellant lived, was not employed on the date of the accident.
Nancy Hopkins asserted a claim on behalf of her daughter against Dyer and Allstate. Allstate offered its policy limit of $15,000. On September 18, 1989, Nancy, as the mother and guardian of appellant, accepted the policy limits from Allstate, and executed a release of all claims against Dyer. The settlement was never approved by the probate court.
At the time of the accident, appellant was an employee of a McDonald's Restaurant owned and operated by Dana J. Lewis. Mr. Lewis was the named insured under a comprehensive general liability policy and a comprehensive catastrophic coverage policy issued by Lumberman's. McDonald's Corporation was an "additional named insured" under the same policies.
Appellant was also employed by the Tuscarawas County Clerk of Courts Office at the time of the accident. The Tuscarawas County Commissioners were covered by a policy of insurance issued by Personal Service. The named insured was designated as "Other: Municipality."
Appellant obtained her job with the Tuscarawas County Clerk of Courts through the Job Training Partnership (hereinafter "JTP"). At that time, JTP was covered by a policy of insurance issued by Nationwide.
Further, while working for the Tuscarawas County Clerk of Courts, appellant was supervised by members of HARCATUS Tri-County CAO, Inc., (hereinafter "HARCATUS"), the summer job coordinator for JTP. At the time of the accident, HARCATUS was insured by a policy issued by Motorists.
In 1999, the Ohio Supreme Court decided the case Scott-Pontzer v.Liberty Mut. Fire Ins. Co.[1]
In late 1999, appellant notified Lumberman's of her claim for uninsured/underinsured motorist coverage. After investigation of appellant's claim, Lumberman's filed a declaratory judgment action in the Tuscarawas County Court of Common Pleas, seeking a declaration of the rights and obligations under its policy regarding appellant's claims. On May 10, 2000, appellant filed an answer and counterclaim for declaratory judgment against Lumberman's, and a third-party complaint against the Kemper Insurance Co., the Kemper Insurance Group, and the Kemper Package (hereinafter "Kemper Defendants").
On May 19, 2000, appellant filed a new answer and counterclaim for declaratory judgment against Lumberman's and an amended third-party complaint against the Kemper Defendants, Douglas Dyer, and Nationwide, among others. On May 22, 2000, a summons on the third-party complaint was issued to Dyer. Dyer received the complaint on May 24, 2000.
On June 12, 2000, appellant filed a new answer and counterclaim for declaratory judgment against Lumberman's and a second amended third-party complaint against the Kemper defendants, Dyer, and Nationwide, among others.
On June 22, 2000, appellant filed a motion to amend her counterclaim and third-party complaint. In a Judgment Entry dated July 11, 2000, the trial court overruled appellant's motion to amend.
On July 28, 2000, appellant filed a motion for default judgment against Dyer. On August 3, 2000, Dyer filed a Motion to Dismiss appellant's Motion for Default Judgment, and a Motion for Leave to File an Answer Instanter. In a September 18, 2000 Judgment Entry, the trial court denied appellant's motion for default judgment and granted Dyer leave to file an answer. Thereafter, the parties filed motions for summary judgment and appellant filed cross-motions for summary judgment relating to each defendant.
In separate Judgment Entries, each filed August 1, 2001, the trial court granted summary judgment in favor of Motorists, Lumbermans, Personal Service, Nationwide, and Dyer. In the same entries, the trial court overruled appellant's motion for summary judgment against each defendant. It is from these judgment entries appellant prosecutes her appeal, assigning the following errors for our review.
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT DOUGLAS DYER'S MOTION FOR LEAVE TO PLEAD AND OVERRULED PLAINTIFF JENNIFER HOPKINS' MOTION FOR DEFAULT JUDGMENT.
 THE TRIAL COURT'S JUDGMENT WHICH GRANTED DEFENDANT DOUGLAS DYER SUMMARY JUDGMENT ON UNPLEAD [SIC] AND THEREFORE WAIVED AFFIRMATIVE DEFENSES IS CONTRARY TO LAW AND MUST BE REVERSED.
 THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT DOUGLAS DYER'S MOTION FOR SUMMARY JUDGMENT AND OVERRULED PLAINTIFF JENNIFER HOPKINS' MOTION FOR SUMMARY JUDGMENT.
 III A. PARENTS DO NOT POSSESS AUTHORITY TO RELEASE A MINOR'S CLAIM ONCE IT HAS ARISEN. A MINOR'S CLAIM FOR INJURIES IS THE MINOR'S PROPERTY RIGHT AND IT CANNOT BE RELEASED BY ANYONE ELSE WITHOUT COURT APPROVAL.
 III B. THE GENERAL ASSEMBLY HAS CARVED OUT AN EXCEPTION THAT PERMITS A PARENT TO SETTLE A CHILD'S CLAIM WITH PROBATE COURT APPROVAL. (O.R.C. § 2111.18 AND SUP. RULE 36.) A CONTRACT WHICH VIOLATES THIS STATUTE IS VOID, A NULLITY AND INCAPABLE OF CONFIRMATION OR RATIFICATION.
 III C. ALLSTATE INSURANCE CO., THE ISSUER OF THE PARENT'S RELEASE AND INDEMNITY AGREEMENT (EX. 7A, DOCKET #99 AND EX. B TO DEFENDANT DOUGLAS DYER'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT) AND THE DRAFT TO NANCY HOPKINS (EX. C TO DEFENDANT DOUGLAS DYER'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT) KNEW THAT THIS RELEASE AND CHECK ISSUED TO A PARENT OF A MINOR CHILD DID NOT RELEASE A MINOR'S CLAIM.
 III D. THOUGH APPELLANT JENNIFER HOPKINS HAS DEMONSTRTED [SIC] THAT THE PARENT'S RELEASE AND INDEMNITY AGREEMENT SIGNED BY NANCY HOPKINS IS VOID, THE SETTLEMENT OF ONE PARTY'S CLAIM DOES NOT SETTLE THE NON-SETTLING PARTY'S CLAIM.
 III E. THOUGH JENNIFER HOPKINS DENIES NANCY HOPKINS RELEASED OR SETTLED HER CLAIM, THE SETTLEMENT OF THIS CLAIM BY NANCY HOPKINS DOES NOT EXTINGUISH A CLAIM FOR UNINSURED MOTORIST COVERAGE OF THE INSURED JENNIFER HOPKINS.
 THE TRIAL COURT'S FINDING THAT JENNIFER HOPKINS IS NOT ENTITLED TO A SECOND RECOVERY OF $15,000.00 FROM ALLSTATE INSURANCE CO., THE INSURANCE CARRIER OF DEFENDANT DOUGLAS DYER, AND THAT SHE IS FORECLOSED FROM MAINTAINING THIS LITIGATION AGAINST ALLSTATE IS CONTRARY TO LAW. ALLSTATE IS NOT A PARTY. THE TRIAL COURT AT THIS TIME DOESN'T HAVE PERSONAL OR SUBJECT MATTER JURISDICTION OVER THE QUESTION OF ANY PAYMENT FROM ALLSTATE PURSUANT TO O.R.C. § 3929.06 AND CIVIL RULE 12(B).
 JENNIFER HOPKINS IS ENTITLED TO UNINSURED/ UNDERINSURED MOTORIST COVERAGE UNDER BOTH THE LMCC COMPREHENSIVE GENERAL LIABILITY POLICY AND THE LMCC COMPREHENSIVE CATASTROPHE POLICY ISSUED TO JENNIFER HOPKINS' EMPLOYER. JENNIFER HOPKINS, AS AN EMPLOYEE, IS AN INSURED UNDER BOTH POLICIES. THE COURT ERRED WHEN ORDERED [SIC] TO THE CONTRARY.
 V A. AS AN EMPLOYEE OF DANA LEWIS dba McDONALD'S, JENNIFER HOPKINS IS AN INSURED UNDER THE LMCC POLICY.
 V B. UNINSURED/UNDERINSURED MOTORIST COVERAGE IS PROVIDED IN THESE POLICIES BY OPERATION OF LAW. THE FAILURE TO OFFER UNINSURED/UNDERINSURED MOTORIST COVERAGE PRIOR TO THE POLICY YEAR OR THE RECEIPT OF A REJECTION BEFORE THE POLICY YEAR MEANS THAT UNINSURED/UNDERINSURED COVERAGE IS IMPOSED AS A MATTER OF LAW. GYORI VS. JOHNSTON COCA-COLA BOTTLING CO. (1996) 76 OHIO ST. 3d 565.
 V C. IF A POLICY OF INSURANCE PROVIDES COVERAGE FOR NON-OWNED OR HIRED AUTOS, AND NO OFFER OF UNINSURED/UNDERINSURED MOTORIST COVERAGE IS MADE BY THE INSURANCE COMPANY, UNINSURED/UNDERINSURED MOTORIST COVERAGE IS IMPOSED ON THAT POLICY. SELANDER VS. ERIE INS. GROUP (1999) 85 OHIO ST. 3d 541.
 V D. THE UNINSURED/UNDERINSURED MOTORIST COVERAGE IMPOSED ON THESE POLICIES IN FAVOR OF EMPLOYEE JENNIFER HOPKINS MAY NOT BE LIMITED TO TIMES WHEN THE EMPLOYEE IS IN THE SCOPE OR COURSE OF HIS EMPLOYMENT WITH THE EMPLOYER. NO OTHER EXCEPTION, LIMITATION, QUALIFICATION OR EXEMPTION MAY BE IMPOSED UPON JENNIFER HOPKINS' RIGHT TO UNINSURED/UNDERINSURED MOTORIST COVERAGE UNDER THE LMCC, KEMPER PACKAGE, COMBINATION COMPREHENSIVE GENERAL LIABILITY OR COMPREHENSIVE CATASTROPHE LIABILITY COVERAGES. THESE SAME PRINCIPLES APPLY TO THE PERSONAL SERVICES INS. CO. POLICY AND ITS IMPOSED UNINSURED/UNDERINSURED MOTORIST COVERAGE.
 V E. JENNIFER HOPKINS MAY STACK ALL THE LIABILITY AND UNINSURED/UNDERINSURED MOTORIST COVERAGES UNDER THESE POLICIES UP TO THE FULL AMOUNT OF DAMAGES AND LOSSES THAT SHE SUFFERED.
 V F. THE DEFENDANT LMCC DID NOT PLEAD THE AFFIRMATIVE JE DEFENSES OF DISAFFIRMANCE, SET OFF, OFF-SET, PRORATA OR EXCESS AND THE CONSTITUTIONAL DEFENSES RAISED IN ITS MOTION FOR SUMMARY JUDGMENT.
 V G. SINCE THE UNINSURED/UNDERINSURED MOTORIST COVERAGES IN THE LMCC POLICIES ARE MANDATED BY LAW, NO OTHER EXCEPTIONS, QUALIFICATIONS OR LIMITATIONS WILL BE READ INTO THIS POLICY INCLUDING ANY NOTICE, CONSENT, SUBROGATION, LATE NOTICE OR ANY OTHER CONDITION. THIS ASSIGNMENT OF ERROR ALSO APPLIES TO THE PERSONAL SERVICES INS. CO. UNINSURED/ UNDERINSURED MOTORIST COVERAGE MANDATED BY LAW.
 V I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE DEFENDANT NATIONWIDE MUTUAL INSURANCE COMPANY AND FAILED TO GRANT SUMMARY JUDGMENT TO APPELLANT. JENNIFER HOPKINS WAS ENTITLED TO UNINSURED/UNDERINSURED MOTORIST COVERAGE UNDER THE NATIONWIDE MUTUAL INSURANCE COMPANY POLICY. AS AN EMPLOYEE OF JTP JENNIFER HOPKINS IS AN INSURED UNDER THE NATIONWIDE UNINSURED/UNDERINSURED MOTORIST ENDORSEMENT.
 VI A. JENNIFER HOPKINS WAS AN EMPLOYEE OF JTP ON 7-6-88. AS AN EMPLOYEE OF JTP, JENNIFER HOPKINS IS AN INSURED UNDER THE NATIONWIDE UNINSURED/UNDERINSURED MOTORIST ENDORSEMENT. THE NAMED INSURED IS JTP, AN UNINCORPORATED ASSOCIATION.
 VI B. THE NAMED INSURED IN THIS POLICY IS JTP, AN UNINCORPORATED ASSOCIATION. INSUREDS ARE DEFINED IN THE POLICY AND INCLUDE EMPLOYEES. THE NAMED INSUREDS ARE NOT INDIVIDUAL ADMINISTRATORS AND OTHER INDIVIDUALS WHO MAKE UP THE UNINCORPORATED ASSOCIATION.
 VI C. THE COURT ERRED WHEN IT CONSIDERED THE AFFIDAVIT OF SHARON PARRY. SHARON PARRY'S AFFIDAVIT IS DEFECTIVE UNDER CIVIL RULE 56 IN MANY PARTICULARS AND EXTENDS OPINIONS BOTH LEGAL AND OTHERWISE WHICH ARE INADMISSIBLE.
 VI I. THE TRIAL COURT ERRED WHEN IT GRANTED PERSONAL SERVICES INS. CO.'S MOTION FOR SUMMARY JUDGMENT AND DENIED APPELLANT JENNIFER HOPKINS' MOTION FOR SUMMARY JUDGMENT. THE COURT'S CONCLUSIONS THAT JENNIFER HOPKINS IS NOT AN INSURED AND THAT SHE IS PRECLUDED FROM ACCESSING THIS POLICY AND IS NOT ENTITLED TO COVERAGE UNDER THIS POLICY IS CONTRARY TO LAW.
 VII A. THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT THE PERSONAL SERVICES INSURANCE CO. POLICY "NAMED INSUREDS" ARE THREE INDIVIDUALS.
 VII B. THE TRIAL COURT'S CONCLUSION THAT SCOTT — PONTZER, SUPRA, APPLIES ONLY TO CORPORATE POLICIES IS CONTRARY TO LAW.
 VII C. JENNIFER HOPKINS, EITHER AS AN EMPLOYEE OR AS AN AGENT OR REPRESENTATIVE OF TUSCARAWAS COUNTY IS AN INSRUED [SIC] UNDER THE PERSONAL SERVICES INSURANCE CO. POLICY ISSUED TO THE TUSCARAWAS COUNTY COMMISSIONERS.
 VII D. PERSONAL SERVICES INSURANCE CO. DID NOT OFFER UNINSURED/UNDERINSURED MOTORIST COVERAGE PRIOR TO THE INCEPTION DATE OF THIS POLICY. NO REJECTION WAS RECEIVED BY PERSONAL SERVICES INSURANCE CO. BEFORE THE INCEPTION DATE OF THIS POLICY. THOUGH A LIMITED UNINSURED/UNDERINSURED MOTORIST ENDORSEMENT WAS ISSUED BY PERSONAL SERVICES INSURANCE CO. ON 9-28-87, UNINSURED/UNDERINSURED MOTORIST COVERAGE IS IMPOSED IN THIS POLICY FOR ALL INSUREDS UNDER THE POLICY UP TO THE FULL EXTENT OF O.R.C. § 3937.18.
 VII E. SINCE NO UNINSURED/UNDERINSURED ENDORSEMENT APPLIES TO THE PERSONAL SERVICES INS. CO. POLICY, AND SINCE UNINSURED/UNDERINSURED MOTORIST COVERAGE IS INSERTED BY OPERATION OF LAW, NO CONDITION, LIMITATION, QUALIFICATION, EXCEPTION OR EXCLUSION MAY BE INSERTED INTO THIS POLICY, INCLUDING NOTICE, LATE NOTICE, SUBROGATION, CONSENT, OR SETTLEMENT AND RELEASE OF THE TORTFEASOR.
 VII I. THE TRIAL COURT ERRED WHEN IT GRANTED DEFENDANT MOTORISTS MUTUAL INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND DENIED PLAINTIFF JENNIFER HOPKINS' MOTION FOR SUMMARY JUDGMENT.
 VIII A. JENNIFER HOPKINS AS AN EMPLOYEE PLACED WITH THE TUSCARAWAS COUNTY CLERK OF COURT'S OFFICE BY HARCATUS AND TRAINED AND IN PART SUPERVISED AND MONITORED BY THE JOB SEARCH COUNSELOR, MARTIN CHUMNEY, IS ENTITLED TO INSURANCE COVERAGE FROM MOTORIST MUTUAL INSURANCE CO. MOTORIST MUTUAL INSURANCE CO. PROVIDED BUSINESS AUTO COVERAGE TO HARCATUS TRI-COUNTY CAO, INC. ON 7-6-88.
 IX. IT IS UNLAWFUL TO ATTEMPT TO LIMIT AN UNINSURED/UNDERINSURED MOTORIST CLAIM WHICH ARISES AS A RESULT OF A CHANGE OF THE INTERPRETATION OF THE LAW.
 X. NOTICE, LATE NOTICE, CONSENT TO SETTLE AND OTHER SIMILAR CLAUSES AND/OR PROVISIONS OF THE LAW ARE UNENFORCEABLE.
 XI. THE APPELLANT HAS CLEARLY, BY THE PRESENTATION OF EVIDENCE, SHOWN THAT THERE HAS BEEN ABSOLUTELY NO PREJUDICE TO THESE INSURANCE CARRIERS. WITHOUT PREJUDICE DUE TO AN ALLEGED DELAY IN NOTIFICATION OR EVIDENCE OF OTHER PREJUDICE THE PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW.
 STANDARD OF REVIEW
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.[2] Civ.R. 56(C) states, in pertinent part:
 Summary Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial.[3]
It is based upon this standard we review appellant's summary judgment claims.
 I
In her first assignment of error, appellant maintains the trial court erred in granting Dyer's motion for leave to plead, and overruling her motion for default judgment. We agree.
The filing of amended and supplemental pleadings is governed by Civ.R. 15. The rule provides, in relevant part:
 (A) * * * A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.[4]
As noted in our Statement of the Case and Facts, supra, appellant filed a third-party complaint with her answer on May 10, 2000. Nine days later, on May 19, 2000, appellant filed an amended third-party complaint. Leave of court was not required for the first amended third-party complaint because appellant filed the amendment before receiving an answer or responsive pleading. The record demonstrates Dyer was served with a copy of the first amended third-party complaint on May 24, 2000. Therefore, Dyer was under an obligation to respond to the first amended third-party complaint.
On June 12, 2000, appellant filed a second amended third party complaint. The record does not demonstrate Dyer was served with a copy of this complaint. However, appellant neither requested, nor was she granted, leave to file the second amended third-party complaint. Therefore, pursuant to Civ.R. 15, appellant's second amended third party complaint was ineffective.
On July 28, 2000, appellant moved for default judgment against Dyer. The motion for default judgment specifically stated Dyer was served within fourteen days of the original answer and original third-party complaint. Further, appellant's motion alleged Dyer received service of the first amended third party complaint on May 24, 2000. We find the motion sufficiently references appellant's filing of the first amended third-party complaint. Appellant alleged Dyer had failed to file an answer or otherwise plead, and requested default judgment against Dyer pursuant to Civ.R. 55.
On August 3, 2000, Dyer filed a Motion to Dismiss appellant's Motion for Default Judgment and requested leave to file his answer instanter. In his motion, appellant noted the second amended third party complaint (filed June 12, 2000), was never properly served upon him. Furthermore, Dyer asserts copies of the amended complaints were never forwarded to his insurance carrier, Allstate. Dyer contends appellant requested default judgment on her third amended third-party complaint. Appellant argued this would be inappropriate because the trial court already overruled appellant's request for leave to file her third amended third-party complaint. Therefore, Dyer argued he was under no obligation to answer the third party complaint.
Dyer argued his motion should also be granted because appellant's counsel refused to either respond or permit Dyer's request for leave to file an answer against appellant. Therefore, Dyer requested the trial court grant him leave to file his answer to appellant's second amended third-party complaint instanter.[5] Dyer "submit[ed] that the third party complaint was not answered due to excusable neglect."[6]
A trial court is granted discretion in permitting a party to file a pleading outside of the time guidelines set forth in the rules. Civ.R. 6 governs extensions of time and provides, in pertinent part:
* * *
 (B) When by these rules * * * an act is required * * * to be done * * * within a specified time, the court for cause shown may at any time in its discretion * * * (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; * * *
Civ.R. 13(A) and Civ.R. 12(A)(1) expressly required Dyer to answer or otherwise plead within twenty-eight days after service of the summons and complaint upon him. Mr. Dyer failed to timely file his answer or responsive pleading within the time allowed.
Default judgment may be awarded when a defendant fails to make an appearance by filing an answer or otherwise defending an action. Civ.R. 55(A). Civ.R. 6(B)(2) allows for an extension of time to file a late pleading within the trial court's discretion "upon motion made after the expiration of the specified period * * * where the failure to act was the result of excusable neglect." A ruling by the trial court on such a motion will be upheld absent an abuse of discretion.[7]
In Miller v. Lint[8], the Supreme Court analyzed a trial court's decision to grant a defendant leave to plead after the plaintiff had filed a motion for default judgment:
 While this court is in general agreement with the universal practice of allowing trial courts broad discretion in settling procedural matters, such discretion, as evidenced by Civ.R. 6(B), is not unlimited, and under the circumstances * * *, some showing of "excusable neglect" was a necessary prelude to the filing of the answer.
 However hurried a court may be in its efforts to reach the merits of a controversy, the integrity of procedural rules is dependent upon consistent enforcement because the only fair and reasonable alternative thereto is complete abandonment.[9]
It was within the trial court's discretion to grant Dyer's motion for leave to plead and to overrule appellant's motion for default judgment upon a showing of excusable neglect. In determining whether neglect is excusable or inexcusable, all the surrounding facts and circumstances must be taken into consideration.[10] Neglect under Civ.R. 6(B)(2) has been described as conduct that falls substantially below what is reasonable under the circumstances.[11]
Because appellant set forth no facts to demonstrate excusable neglect for his failure to file an answer, we find the trial court erred in granting Dyer leave to file an answer, and in denying appellant's motion for default judgment against Dyer. Appellant's first assignment of error is sustained.
 II, III
In appellant's second and third assignments of error, she argues the trial court erred in granting Dyer's motion for summary judgment. In light of our disposition of appellant's first assignment of error, we sustain appellant's second and third assignments of error.
 IV
In appellant's fourth assignment of error, she maintains the trial court erred in finding she was not entitled to a second recovery of $15,000 from Allstate. Appellant further maintains the trial court erred in foreclosing any legal action by appellant against Allstate. Appellant argues Allstate was not a party to the action and therefore, the trial court was without subject matter jurisdiction over any question of payment to Allstate. We agree.
In its August 1, 2001 Judgment Entry granting summary judgment in favor of Dyer, the trial court found, as a matter of law, appellant was "not entitled to a second recovery of fifteen thousand dollars ($15,000.00) from Allstate Insurance Company, the insurance carrier for defendant Douglas Dyer."[12]
We agree with appellant, Allstate is not a party to this action. Therefore, any order purporting to adjudicate liability, or any other issue between Allstate and appellant is void.
Appellant's fourth assignment of error is sustained.
 V
In appellant's fifth assignment of error, she maintains she is entitled to UM/UIM motorist coverage under Lumberman's comprehensive general liability policy and comprehensive catastrophe policy as an employee of McDonalds. This assignment contains a number of subsections.
In subsection B to the assignment of error, appellant argues uninsured/underinsured motorist coverage was provided by operation of law due to Lumbermans' failure to offer such coverage prior to the policy year inception. In subsection C of appellant's fifth assignment of error, she contends coverage was imposed by operation of law because Lumberman's policy contained coverage for owned or hired autos, and Lumberman's failed to offer uninsured/underinsured coverage. In subsection D to appellant's fifth assignment of error, she maintains any uninsured/underinsured motorist coverage imposed by operation of law may not be limited by the underlying policies requiring an employee to be in the scope or course of employment at the time of injury. In subsection E to appellant's fifth assignment of error, appellant maintains she is entitled to stack all of the liability and uninsured/underinsured motorist coverages up to the full amount of damages and losses suffered. In subsection F to appellant's fifth assignment of error, she maintains Lumberman's is precluded from asserting the affirmative defenses of disaffirmance, set off, off-set, prorata, or excess because it failed to raise such claims as affirmative defenses in their answer. In subsection G to appellant's fifth assignment of error, she maintains no exceptions, qualifications, or limitations should be read into any uninsured/underinsured motorist coverage arising under operation of law.
In its August 1, 2001 Judgment Entry, the trial court found appellant was not an insured under the Lumberman's policy of insurance issued to Dana Lewis and therefore was not entitled coverage under the policy. Further, the trial court found Scott-Pontzer, supra, to be inapplicable to the facts of this case because the Lumberman's policy's named insured was an individual, Dana Lewis.
Plaintiff's Exhibit 17 is the general declarations page for the Lumbermans' general liability and comprehensive catastrophic liability policies. It indicates the named insured to be "Licensed McDonald's Franchises," and states the legal entity is "an individual (franchise operator)." McDonald's Corporation, and all wholly owned subsidiaries, are named as "additional insureds" "with respect to building, public liability, and rental value as their interests may appear."[13]
The word "insured" is defined in the policy and contained in plaintiff's Exhibit 19:
 Insured means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the companies liability * * *
"Persons Insured" is defined in plaintiff's Exhibit 20 to include:
 E. any employee * * * of the named insured arising out of or in the course of his employment * * *.
Lumberman's modified the comprehensive general liability coverage with a hired automobile and non-owned automobile liability insurance endorsement. A copy of the endorsement is found in plaintiff's Exhibit 21. The endorsement names employees as "insureds." The "Persons Insured" provision is replaced with the following language:
 Each of the following is an insured under this insurance to the extent set forth below:
 b. any other person using a hired automobile with the permission of the named insured, but with respect to bodily injury or property damage arising out of the loading or unloading thereof such other persons shall be insured only if he is * * *
2) an employee of the named insured
* * *
In the comprehensive catastrophe liability coverage policy, contained in Exhibit 23, Section 7 provides employees are "additional insureds." We find both policies included employees as insureds. We acknowledge this coverage applies only when an employee is acting within the scope of employment. However, this fact does not end our analysis.Both policies provided hired/non-owned automobile coverage. Therefore, Lumberman's was required to offer uninsured/underinsured motorist coverage.[14]
Lumberman's failure to offer such coverage, created uninsured/underinsured motorist coverage by operation of law pursuant to R.C. 3937.18.[15] Any language in the policies restricting insurance coverage was intended to apply only to the policies as issued; such restrictions could not have been intended to cover uninsured/underinsured coverage created by operation of law.[16] This is so because the parties did not contemplate any such coverage before judicial intervention. Accordingly, we find appellant was an insured for uninsured/underinsured motorist coverage purposes under both the general liability and comprehensive catastrophe liability coverages.[17]
Given its finding no coverage existed, the trial court was not called upon to decide the remaining issues of stacking, prorata, exposure, and potential affirmative defenses, etc. We find it premature to rule on these issues and remand said issues to the trial court for consideration.
Appellant's fifth assignment of error is sustained.
 VI, VIII
In appellant's sixth assignment of error, she maintains the trial court erred in granting summary judgment in favor of Nationwide, the insurance carrier for JTP. In the first and second subsections of appellant's sixth assignment of error, she contends she was an employee of JTP on the date of the accident. Because the policy provides coverage for employees, appellant argues she in an insured under the policy. In the third subsection to appellant's sixth assignment of error, she maintains the trial court erred in considering the affidavit of Sharon Parry.
In her eighth assignment of error, appellant claims she is an insured under Motorists policy covering HARCATUS. As with the Nationwide policy, appellant claims she in an insured under this policy for purposes of underinsured motorist coverage pursuant to Scott-Pontzer. We address appellant's contentions in turn.
In Scott-Pontzer, the Ohio Supreme Court reviewed a commercial auto liability policy which defined an insured as "you." Because the name insured was an corporation, the Ohio Supreme Court held "it was ambiguous whether a corporation's employees were insureds entitled to underinsured motorist (UIM) coverage under a commercial automobile liability policy which had designated the corporation as the named insured and which defined "insured" to include "you" and "[i]f you are an individual, any family member" since it would be meaningless limit protection solely to a corporate entity, which cannot occupy or operate an automobile or suffer bodily injury or death; thus, the policy had to be construed as extending insured status to employees.[18]
Because a corporation acts through its employees, the Scott-Pontzer
court concluded the "you" as used in the policy must also include the named insured's employees. Accordingly, the Ohio Supreme Court found Mr. Pontzer was an insured under the policy because he was an employee of the named insured at the time of his accident.
Accordingly, we turn our attention to whether appellant was an employee of either organization at the time of the accident.
At the time of the accident, appellant was employed part-time as a clerical assistant in the Tuscarawas County Clerk of Courts. Appellant was placed in this position through HARCATUS and JTP.
JTP is an unincorporated association made of individuals, businesses, and local government entities administering programs funded by the federal government under the Job Training Partnership Act, for the purpose of providing underprivileged youths and adults job opportunities and employment skills. Because appellant was qualified to participate in the JTP, administered in conjunction with HARCATUS, JTP placed appellant with the clerk of courts.
JTP paid appellant's wages with funds provided by the federal government. However, neither JTP nor HARCATUS, trained, supervised, or directed appellant in any of the actual duties appellant worked for the clerk of courts. Appellant never worked directly for JTP.
JTP hired HARCATUS to administer the JTP 1988 summer program in Tuscarawas County, Ohio. HARCATUS is a community action organization founded in 1965 to provide residents of Harrison, Carroll, and Tuscarawas Counties with educational, career and self improvement programs. JTP provided all of the guidelines and parameters for the summer youth program in Tuscarawas County in 1988. JTP set the income criteria for applicants, determined eligibility, selected participants, tested and interviewed applicants, and set intake procedures.
Pursuant to its contract with JTP, HARCATUS assisted in the recruitment and placement of participants during the 1988 summer program, in compliance with the guidelines set forth by JTP. After a participant had been recruited and placed at a work cite, HARCATUS periodically monitored participants at the work cites on behalf of JTP. HARCATUS also provided remedial math and reading intervention. HARCATUS did not control the work assigned to the participant by the employer. HARCATUS would collect attendance records for the participants in the JTP program and ship the records to the JTP office in Canton, Ohio. JTP issued checks and withheld payroll taxes for appellant.
The Tuscarawas County Clerk of Courts provided the direct supervision of appellant at the work cite. In that regard, appellant received her training from the clerk's office, and worked at the direction of her supervisors at the clerk's office. Her daily work was supervised and assigned by the clerk of courts. Further, the clerk of courts set her work schedule and hours.
JTP was insured by Nationwide under a commercial liability policy providing business auto and UM/UIM coverage. HARCATUS was an insured under a similar policy issued by Motorists.
Appellant asserts she is an employee of JTP and HARCATUS. As an employee, and pursuant to Scott-Pontzer v. Liberty Mut. Fire Ins. Co., she was entitled to UM/UIM coverage under each of their respective insurance policies. We disagree.
Ohio Courts have adopted the "right to control" test to determine whether or not a person is an employee.
In Bostic v. Connor[19] the Ohio Supreme Court reviewed the issue of whether a person was an employee or an independent contractor. In making this determination, the Ohio Supreme Court found the key determination was who had the right to control the manner or means of doing the work.[20] Further, the Bostic articulated the following test to determine whether a person is an employee, following Gillum v. Indust.Comm.:[21]
 "the principal test applied to determine the character of the arrangement is that if that the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is reasonable to the employer only for the result, an independent contractor relationship is thereby created . . . the factors to be considered include, but are certainly not limited to, such indicia as who controls the details and quality of the work, who controls the hours worked, who selects the materials, tools and personal used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts.[22]
Where the evidence is not in conflict, the trial court may determine the questions of whether a person is an employee as a matter of law.[23]
We find appellant was not an employee of either JTP or Harcatus.
The undisputed facts establish neither JTP nor Harcatus controlled the detail and quality of appellant's work, the hours appellant worked, the materials with which or personnel with whom appellant worked, or the type of business. Because we find the Tuscarawas County Clerk of Courts had the right to control the manner and means of appellant's work, we find appellant was not an employee of either JTP of HARCATUS. We also note inVandriest v. Midlem[24] the Ohio Supreme Court ruled a participant in a federally-funded work program is actually an employee of the employer where he or she was working as a matter of law. As in Vandriest,
appellant was also participant in a federally-funded work program. The fact JTP and HARCATUS exercised limited recruitment and oversight functions did not constitute sufficient control, as a matter of law, to establish an employer/employee relationship.
Accordingly, the first subsection of appellant's sixth assignment of error is overruled. In light our disposition herein, the second and third subsections of appellant's sixth assignment of error are also overruled.
For the same reason, the first subsection of appellant's eighth assignment of error is also overruled.
In the remaining subsection, appellant asks this Court to extend the holding in Scott-Pontzer to "clients" of an insured. We decline to extendScott-Pontzer to cover clients of named insureds in addition to their employees. Accordingly, the second subsection of appellant's eighth assignment of error is also overruled.
 VII
In appellant's seventh assignment of error, she maintains the trial court erred in granting summary judgment in favor of Personal Service. We agree.
At the time of the accident, the Tuscarawas County Commissioners were covered by a policy of insurance issued by Personal Service which included automobile liability coverage as well as UM/UIM coverage. The declaration page of the policy indicates the named insured is "Tuscarawas County Commissioners." Item 2 of the declaration provides a space to indicate whether the named insured is an individual, partnership, corporation, joint venture, or other. In this instance, "other" was marked with an X and the word "Municipality" has been written in. Accordingly, we find the named insured was not limited to the group of individuals commissioners.
In an August 1, 2001 Judgment Entry, the trial court made the following conclusions of law:
 Jennifer Hopkins is not an "insured" under the Personal Service Insurance Company policy of insurance issued to Tuscarawas County, Ohio, Commissioners and is not
entitled to coverage under said policy.
 The law of the case Scott-Pontzer v. Liberty Mutual Fire Insurance Company (1999), 85 Ohio St.3d 660, is inapplicable to the facts of this case and is distinguished. The insurance policy in the Scott-Pontzer case, supra, was a business auto policy and an umbrella policy in which the sole "named insured" was a corporation. The "named insured" in the Personal Service Insurance Company policy of insurance are three (3) individuals, the Tuscarawas County, Ohio, Commissioners.
 Jennifer Hopkins is precluded from accessing uninsured motorist/under-insured motorist coverage relating to the Personal Service Insurance Company policy of insurance issued to the Tuscarawas County, Ohio, Commissioners in effect on 7/6/88.[25]
It is clear the trial court found the named insured in the Personal Services policy to have been three individuals. We disagree with the trial court's assessment. Because the policy named the Tuscarawas County Commissioners as the insured, and noted that the named insured was a municipality, we find the insurance policy covered more than the three individual county commissioners. This conclusion is bolstered by the fact the general liability automobile policy covered a fleet of vehicles under owned automobiles and noted the premiums included non-owned automobiles "if any." The listed automobiles included several passenger buses, dump trucks, semi-trailers, semi-tractors, tar distributors, and a sledge sprayer.
Pursuant to Scott-Pontzer, we find the employees of Tuscarawas County were also included under the Personal Services' contract. We now turn our attention to whether any UM/UIM coverage existed under the policy.
On September 23, 1987, the Tuscarawas County Commissioners executed a rejection of underinsured motorist coverage for its general automobile policy. This rejection was issued twenty three days after the inception of the policy.
Pursuant to this Court's opinion in Leisure v. State Farm Mut. Auto.Ins. Co.,[26] we find the rejection in the matter sub judice was ineffective on the date of the accident. Accordingly, uninsured motorist coverage for the general liability policy arose by operation of law.
Because the UM/UIM coverage arises by operation of law, Tuscarawas County employees benefit from such coverage. Further, any exclusions or conditions contained within the general policy do not transfer to the uninsured/underinsured motorist coverage in this instance for the same reasons set forth in our analysis of appellant's fifth assignment of error. Accordingly, we find coverage was available to appellant under the uninsured/underinsured motorist coverage created by operation of law.
Appellant's seventh assignment of error is sustained. The August 1, 2001 Judgment Entry of the trial court with regard to Personal Service is reversed. The remaining issues are remanded to the trial court for further proceedings consistent with law and this opinion.
 IX
In her ninth assignment of error, appellant maintains the trial court unlawfully attempted to limit UM/UIM coverage arising by operation of law. Appellant's ninth assignment of error is sustained for the same reasons set forth in our analysis of appellant's fifth and seventh assignments of error.
 X, XI
In appellant's tenth assignment of error, she maintains the trial court can not enforce provisions regarding notice, late notice, consent to settle and similar clauses in an UM/UIM policy arising by operation of law.
In appellant' eleventh assignment of error, appellant maintains she has demonstrated the appellee insurance carriers were not prejudiced due to the delay in notification or unavailability of evidence. Accordingly, appellant argues she should not be barred from coverage based upon such prejudice. Because the trial court did not rule on these issues given its findings no coverage existed, we find it premature for this Court to rule on them at this juncture. Upon remand, the trial court may find this court's holdings in Myers v. Safeco Ins. Co. of Amer.,[27]
instructive.
Appellant's tenth and eleventh assignments of error are overruled as premature.
By: HOFFMAN, P.J., WISE, J. concur FARMER, J. concurs in part; dissents in part.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Tuscarawas Court of Common Pleas is affirmed in part; reversed in part; and this matter remanded to the trial court for further proceedings in accordance with our opinion and the law.
[1] Scott-Pontzer v. Liberty Mut. Fire Ins. Co. (1998),85 Ohio St.3d 660.
[2] Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36.
[3] Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
[4] (Emphasis added).
[5] Even assuming, arguendo, appellant's second amended third-party complaint was effective, or had been filed with leave of court, Dyer failed to timely file an answer or responsive pleading.
[6] Motion at 3.
[7] Marion Prod. Credit Assn. v. Cochran (1988), 40 Ohio St.3d 265,271, 533 N.E.2d 325, 331.
[8] Miller v. Lint (1980), 62 Ohio St.2d 209.
[9] Id. at 214-215. See also, Davis v. Immediate Medical Services,Inc. (1997), 80 Ohio St.3d 10, 14.
[10] Griffey v. Rajan (1987), 33 Ohio St.3d 75, syllabus.
[11] State ex rel. Weiss v. Indus. Comm. (1992), 65 Ohio St.3d 470,473, citing GTE Automatic Elec., Inc. v. ARC Industries, Inc. (1976),47 Ohio St.2d 146, 152.
[12] Judgment Entry at 8-10.
[13] Plaintiff's Exhibit 15.
[14] Linko v. Indemn. Ins. Co. of N. Am. (2000), 90 Ohio St.3d 445; Selander v. Erie Ins. Group (1999), 85 Ohio St.3d 541.
[15] Gyori v. Johnston Coca-Cola Bottling Group (1996),76 Ohio St.3d 565, 568.
[16] Scott-Pontzer at 666.
[17] Because we find employees are insureds under both policies and because UM/UIM coverage was created by operation of law due to Lumberman's failure to offer UM/UIM coverage, it is unnecessary to determine whether the named insured in the policies ("Licensed McDonald's Franchises," or the legal entity "individual (franchise operator) or "the actual legal operating entity of the named insured" creates an ambiguity. For the same reason, we find it unnecessary to address whether the inclusion of McDonald's Corporation as an additional named insured, albeit with limited coverages, created an ambiguity.
[18] Id. at para. 1 of the syllabus.
[19] Bostic v. Connor (1988), 37 Ohio St.3d 144.
[20] Id. at 146.
[21] Gillum v. Indust. Comm. (1943), 141 Ohio St. 373.
[22] Id. at 146.
[23] Bostic v. Connor, supra, at 146.
[24] Vandriest v. Midlem (1983), 6 Ohio St.3d 183.
[25] Judgment Entry at 6-7.
[26] See Gyori, supra; Leisure v. State Farm Mut. Auto. Ins. Co. (Nov. 19, 2001), Stark App. No. 2001CA00095, unreported.
[27] Myers v. Safeco Ins. Co. of Amer. (Feb. 18, 2000), Licking App. No. 99CA00083, unreported.